223 So.2d 214 (1969)
Percy A. RANKIN, Plaintiff-Appellant,
v.
F. C. DOYAL, Jr., Administrator of the Division of Employment Security of the Department of Labor, State of Louisiana, et al., Defendants-Appellees.
No. 11175.
Court of Appeal of Louisiana, Second Circuit.
March 3, 1969.
*215 Bobby D. Sutton, Shreveport, for plaintiff-appellant.
Marion Weimer, James A. Piper, James A. McGraw, Baton Rouge, for F. C. Doyal, Jr.
Cook, Clark, Egan, Yancey & King, Shreveport, for Bird & Son, Inc.
Before AYRES, BOLIN, and DIXON, JJ.
AYRES, Judge.
Plaintiff, a former employee of Bird & Son, Inc., discharged May 10, 1968, for failing to follow orders and for directing abusive, vulgar, and profane language to his foreman, appeals from a judgment sustaining a decision of the Louisiana Board of Review which affirmed a referee's decision disallowing plaintiff's claim for unemployment compensation on the ground that he was discharged from his employment for misconduct connected therewith.
The facts are disclosed in a transcript of the proceedings had before the appeals referee and the Louisiana Board of Review. At the hearings two witnesses testified: J. B. Feazel of Bird & Son, Inc., *216 claimant's foreman, and claimant himself. Feazel testified that he ordered claimant to pick up some roofing off the floor; that claimant refused to do so and argued with him about doing it, whereupon Feazel advised claimant to either pick up the roofing or go home. Claimant disobeyed this instruction and, moreover, directed to Feazel abusive, vulgar, and indecent language. A similar experience, other than the use of improper language, had ensued between the foreman and the employee on a prior occasion. Upon the final compliance by the employee with the foreman's instructions on that occasion, a confrontation was then avoided.
Claimant's version of the circumstances surrounding his discharge was not significantly different from that of Feazel. Claimant admitted the order to pick up the roofing, upon which he voiced an objection because he had not had enough "breaks" during the day, and that, for that reason, he had argued with the foreman. Claimant further stated he had told the foreman that he would pick up the roofing but that he wanted to know when he would get a "break." He then stated Feazel's reply was that he had already had his "break." Claimant confirmed his use of abusive, vulgar, and indecent language toward his foreman. Claimant's card was then pulled and he left.
It clearly appears from the testimony of both of these witnesses that claimant did not comply with his foreman's order to pick up the roofing from the floor; that in fact this was never done by the employee. Nor is there any question that claimant directed abusive, vulgar, and profane language toward his superior.
Upon filing of this claim an investigation was made. Claimant was duly notified that he was discharged for not following the instructions of his foreman and for using abusive language in replying to his foreman. The instructions were not of an unreasonable nature and claimant was notified that his actions were a willful disregard of the employer's interests, and, therefore, that his discharge was for misconduct connected with his employment.
A review of this decision was made by an appeals referee after conducting a hearing in connection therewith. The findings of the referee were that:
"The claimant worked for this employer approximately fourteen years as a laborer. On the claimant's last day of work he was instructed to perform a certain task, that is pick up some roofing off the floor. The claimant felt that he should be given time to perform the task as it was his break period. He became argumentative and directed abusive language to his foreman, this led to the claimant's termination."
The referee ruled that:
"The claimant was assigned a normal task well within his ability to perform and within the nature of his work duties. He became argumentative and directed abusive language at his foreman. The claimant's actions are considered to have been insubordination and therefore misconduct connected with the employment."
The Board of Review then reviewed the administrative record of the appeals referee and, on finding no errors therein, affirmed the referee's decision. At the instance of claimant, a judicial review then followed. The trial court held that claimant's refusal to obey the instructions and orders of his foreman, compounded by the fact that claimant directed abusive and profane language toward his foreman, amounted to misconduct within the meaning of the Unemployment Compensation Act. The trial judge additionally stressed the fact that appellant had, on another occasion, refused to obey his foreman's instructions.
The scope of a judicial review in unemployment compensation cases is outlined in LSA-R.S. 23:1634 which provides, in part, that:
"In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, *217 shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."
Therefore, in the absence of fraud, a judicial review of the findings of the Board of Review in unemployment compensation matters is statutorily limited to (1) whether the facts found by the board are supported by competent evidence produced at the hearings, and, if so (2), whether such facts do, as a matter of law, justify the action taken. LSA-R.S. 23:1634; Hall v. Doyal, 191 So.2d 349 (La.App., 3d Cir. 1966); Gardere v. Brown, 170 So.2d 758 (La.App., 1st Cir. 1964); Lee v. Brown, 148 So.2d 321 (La.App., 3d Cir. 1962); Turner v. Brown, 134 So.2d 384 (La.App., 3d Cir. 1961). Moreover, the administrative tribunal's evaluation of the credibility of opposing witnesses is binding upon the courts in a judicial review of the agency's determination. Cole v. Doyal, 195 So.2d 759 (La.App., 3d Cir. 1967writ refused); Hall v. Doyal, supra.
"Misconduct," within the meaning of the Unemployment Compensation Act, excluding from its benefits an employee discharged for misconduct, must be an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interests or of his duties and obligations to the employer. LSA-R.S. 23:1601, subd. (2); Horns v. Brown, 243 La. 936, 148 So.2d 607, 609 (1963). A violation of an employer's rule or order constitutes misconduct within the meaning of the Unemployment Compensation Act. Jackson v. Doyal, 198 So.2d 469 (La.App., 2d Cir. 1967; Campbell v. Doyal, 190 So.2d 661 (La.App., 2d Cir. 1966); Wilson v. Brown, 147 So.2d 27 (La.App., 2d Cir. 1962); Holmes v. Brown, 147 So.2d 25 (La.App., 2d Cir. 1962); Jackson v. Brown, 136 So. 2d 329 (La.App., 2d Cir. 1961); Rachal v. Brown, 136 So.2d 74 (La.App., 3d Cir. 1961).
Insubordination toward the employer, including abusive and profane language, amounts to misconduct sufficient to disqualify the claimant from receiving unemployment benefits. Wilson v. Brown, supra; Jackson v. Brown, supra.
Misconduct on the part of an employee, as contemplated in the unemployment compensation statute, should be determined by the nature of the violation with due consideration of the factors which enter into the proper conduct of the employer's work and business rather than determined upon the basis of the number of violations. Jackson v. Doyal, 198 So.2d 469 (La.App., 2d Cir. 1967).
An individual is disqualified for benefits under the statute if he is found to have been discharged for misconduct connected with his employment. LSA-R.S. 23:1601, subd. (2). This was the initial finding made upon plaintiff's filing of his claim and was the finding of the appeals referee, the Louisiana Board of Review, and the trial court. With these findings and conclusions, we find ourselves, after a review of the jurisprudence and of the cases noted, in full accord.
Counsel for claimant has relied in brief upon Beaird-Poulan, Inc. v. Brady, 154 So.2d 589 (La.App., 3d Cir. 1963), and upon Henton v. Brown, 157 So.2d 238 (La. App., 3d Cir. 1963), and contends that claimant's action may be characterized as a single "hot-headed" incident not amounting to misconduct within the contemplation of the statute. A review of these cases disclosed that the actions of the employees there were scarcely comparable to the actions of claimant in the instant case. For instance, in the Henton case two employees engaged in a fight between themselves. Neither was charged with disobeying an order of his employer, nor was there an act of insubordination as existed here. In Beaird-Poulan, Inc. v. Brady, the employee merely refused to pick up some molding *218 from the floor when directed to do so by his foreman. Here, the claimant not only refused to follow his foreman's instructions and orders but, as heretofore noted, directed abusive, vulgar, and profane language to him. This constituted a rank form of insubordination.
The findings of the Board of Review as to the facts are supported by the evidence. There is no element of fraud nor question of law involved and, consequently, this finding of facts by the board is conclusive. LSA-R.S. 23:1634; Hall v. Doyal, supra.
We note, however, that claimant was assessed with costs in the judgment appealed. This was error as there is no showing that the proceedings for judicial review were instituted or continued frivolously. LSA-R.S. 23:1692; Parish v. Brown, 163 So.2d 860 (La.App., 2d Cir. 1964); Reed v. Brown, 159 So.2d 733 (La. App., 3d Cir. 1964).
The judgment appealed is accordingly amended by deletion of the assessment of costs against plaintiff and, as thus amended, affirmed.
Amended and affirmed.