STOKER, Judge.
Petitioner, Maureen Morris, was denied unemployment compensation following her discharge by her employer. She appeals to seek reversal of adverse decisions rendered against her at every level where her case was heard below. She has been denied unemployment compensation on the ground that her discharge was for misconduct, thus disqualifying her from benefits under the Louisiana Employment Security Act. R.S. 23:1601(2). Petitioner was terminated after refusal to remove a notice she had placed on the company bulletin board.
Under R.S. 23:1634 judicial review under the Louisiana Employment Security Act is limited to questions of law absent findings of fact based on insufficient evidence of fraud. We find there was sufficient evidence to support findings of the Louisiana Board of Review. Petitioner does not complain of the findings of fact but only of the legal conclusions to be drawn from them, or to state it otherwise, plaintiff complains that the law has been incorrectly applied. She contends that her refusal to remove the notice from the company bulletin board under the circumstances did not amount to misconduct disqualifying her from receiving unemployment compensation.
Maureen Morris was employed by Morton Salt Company as a can line inspector for the period running from June 19, 1968 through April 29, 1975. Morton Salt Company is a division of Morton-Norwich Products, Inc. Ms. Morris was a member of Local Union # 29 of the International Chemical Workers Union and was president of that local and steward of the union.
The procedural history of this case is’ as follows. A hearing was conducted in the Louisiana Department of Employment Security on August 8, 1975. The hearing was held before appeals referee, James 0. Faul. The referee rendered his finding of fact and opinion on August 14, 1975. It was his opinion that Miss Morris was disqualified for unemployment compensation because of misconduct. He determined, therefore, that Miss Morris was disqualified from receiving unemployment'compensation benefits effective April 29, 1975, the date of her termination.
Ms. Morris appealed to the Louisiana Board of Review which upheld the referee. The Board of Review was of the opinion that petitioner should have obeyed the order of the plant manager of the employer to remove the notice from the bulletin board and that she should have taken up her difference of opinion with the manager by following the grievance procedure as provided under the labor agreement.
Thereafter Ms. Morris filed a petition for review in the district court. After hearing the case the district court affirmed the decision of the Board of Review. Following the judgment of the district court this appeal was filed.
A more detailed statement of the facts of this case is as follows. The company management had become concerned over fighting which was occurring between employees on plant premises. Therefore, the management posted the following memo on a number of bulletin boards located at various places on the plant premises.
“MEMO TO MORTON EMPLOYEES
March 19, 1975
During the last year or two, there have been a number of occasions on which two or more employees engaged in a fight on the plant premises. The Company is quite concerned about the apparent increasing number of these incidents. We do not believe fighting is an appropriate way for employees to settle their differences, and we are convinced that sooner or later someone is going to be seriously *540 hurt in one of these fights if they continue to occur. In the past, we have typically assessed participants in a fight a one-day disciplinary layoff, but this has obviously not discouraged a number of employees from becoming involved in such dispute. This memorandum shall serve as notice that in future incidents of this kind we intend to take much more severe disciplinary action, up to and including discharge.
/s/ J. E. Goodbrake
/s/ V. L. Langlinais”
After the above notice was posted petitioner obtained a copy of the company’s notice and typed on the bottom of it the following notice of her own:
“NOTICE
LOCAL 29 REJECTS THIS NOTICE AS NOT AUTHORIZED BY THE COLLECTIVE BARGAINING AGREEMENT. UNION MEMBERS ARE NOT BOUND BY THIS. ANY ONE DISCIPLINED ON THIS ACCOUNT IS TO REPORT TO ME IMMEDIATELY!
MAUREEN MORRIS
PRESIDENT, LOCAN 29
•/s/ Maureen Morris”
By admission of the plant manager, the union had permission to post routine notices on the company bulletin board. Prior to posting the notice with her own notice affixed at the bottom as above described on the bulletin boards in the plant, Ms. Morris obtained the permission of the night mill superintendent. After receiving his permission she posted the notices. After the plant manager, Mr. Goodbrake, learned of this he called Ms. Morris in and sought to have her remove the notice which Ms. Morris had posted. She refused and the dismissal followed sometime thereafter.
. Inasmuch as we are bound by the findings of fact in the administrative channel, we will give the findings of the appeals referee, James 0. Faul. This hearing was conducted on August 8, 1975 in New Iberia, Louisiana in the offices of the Louisiana Department of Employment Security. At that time petitioner was represented by counsel. The findings of fact of Mr. Faul read as follows and concluding that is his opinion:
“FINDINGS OF FACT
The claimant worked for this employer from June 19, 1968 to April 29, 1975 as a can line inspector, earning $3.40 per hour. She was scheduled to work forty hours per week and was required to work shift work. The plant manager and assistant plant manager met with the claimant as President of the International Chemical Workers’ Union, Local Union No. 29 and her union committee on March 19, 1975, in regards to the employer’s position of employees fighting on the plant premises. The employer, as a result of the meeting, posted a memorandum on March 20, 1975, for the benefit of the employees on various company bulletin boards through the plant. The claimant, as President of the Local Labor Union No. 29, did not agree with the position of the employer with regards to the memorandum posted by the employer. She consulted with the Attorney for the union after a membership meeting had been held. The claimant had a statement typed on a copy of the employer’s memorandum which had been given to her by a union member. She signed the statement which stated what position the Local Union No. 29 had taken in regards to the employer’s memorandum to the employees. She had several copies of the memorandum made, and on April 23, 1975, after getting permission from the night mill superintendent, she posted copies of the employer’s memorandum on the company’s bulletin boards with her signed statement on it. The claimant was called to the plant manager’s office during the morning of April 24, 1975, and she was requested to remove the copies of the memorandum with her statement which she had posted on various company bulletin boards. The claimant refused to remove the copies with her statement on it, as she felt that she had the right to inform the union members. The claimant was instructed to return to her work, which she did. She was called back to the plant mana *541 ger’s office later during the day, and informed that she was being suspended from her job for an indefinite period of time. The claimant was called while off from work due to the suspension, to report to the plant manager’s office on April 29, 1975, at which time she was informed that she was being discharged from her job for having refused to remove the copies of the employer’s memorandum with her statement on it from the company’s bulletin board. She has filed a grievance through her union and the case is in arbitration.
OPINION
R.S. 23:1601(2) provides that a claimant shall be disqualified when discharged for misconduct connected with employment. Such disqualification shall continue until such time as the claimant has returned to work and earned wages equivalent to ten times the weekly benefit amount, and separation from such employment must be under non-disqualifying circumstances.
The facts and evidence presented in this case show that the claimant’s discharge from the employment for refusing to remove from the employer’s bulletin board, a notice she had posted on copies made of the employer’s memorandum to the employees was insubordination. Therefore, her actions were a disregard of the employer’s interest. Under the circumstances, it is determined that her discharge was for misconduct in connection with the employment.
IT IS ORDERED that the determination of the Agency, disqualifying the claimant effective April 29, 1975, be affirmed.
/s/ James 0. Faul
JAMES 0. FAUL
APPEALS REFEREE”
Following the denial of relief by the appeals referee, petitioner sought relief from the Louisiana Board of Review, and that body denied her appeal. In an opinion dated January 9, 1976 the Board of Review consisting of three persons issued the following opinion and order:
“This case came before the Louisiana Board of Review upon an appeal timely filed by the claimant through J. Minos Simon, Ltd., on August 21, 1975, from a decision of James 0. Faul, Appeals Referee, rendered and mailed August 14, 1975. The Referee, in his decision, ordered that the determination of the Agency disqualifying the claimant effective April 29, 1975, be affirmed.
The Board of Review has read all of the testimony and records in this instant ease, and the claimant, as Union President, should have followed the grievance procedure rather than disregarding orders to remove the notice on the bulletin board.
This is the reason as we understand labor agreements for the grievance procedure; that is, to orderly resolve disputes between the Union and Company over contract provisions or practices occurring at the facilities.
It is our opinion that the appeal should be denied.
IT IS ORDERED that the decision of the Appeals Referee be affirmed.”
The opinion of the trial judge is contained in written reasons. His reasons are set forth briefly and state, in essence, that the court reviewed the law and evidence contained in the file and for the reasons stated by the appeals referee he concurs in the decision of the Board of Review. Accordingly, he affirmed the action of the Board of Review, disallowing petitioner the right to receive unemployment compensation benefits.
After our own review of the record and the findings of the district court, the Louisiana Board of Review, the appeals referee and the action of the agency, we have concluded that no error of law has been committed.
The collective bargaining agreement in force between petitioner and her employer contains provisions relating to grievance procedure. The provisions are contained in ARTICLE VII and read in part as follows:
“ARTICLE VII
GRIEVANCE PROCEDURE
*542 SECTION 7. 1. DEFINITION: A grievance is defined to be controversy between the Company and the Union on behalf of an employee or employees covered by this Agreement, which controversy must pertain to One (1) of the following:

B. Any matter involving the interpretation of any provision of this Agreement.
C. Any matter involving the alleged violation of any provision of this Agreement.”
As we view the notice given by petitioner it does not constitute an invitation to company employees to fight. On its face it simply states the opinion of petitioner as union president that the disciplinary procedures proposed to be taken by the management against employees for fighting was contrary to the collective bargaining contract. While the management of Morton Salt Company may view the notice in a different light, it is really immaterial because it is clear under the facts of this ease that the ultimate dismissal of Ms. Morris was not because she posted the notice or what she said in the notice. The reason she was terminated was simply because she refused to take the notice off of the bulletin board.
It will be noted that she was guilty of no reprehensible conduct to begin with. The company on its part had made it a policy to permit the union to use its bulletin board for “routine” notices. The management took the position that this was not a “routine” notice and that the night mill superintendent had acted beyond his authority in granting Ms. Morris permission to affix the notice to the company bulletin boards. However that may be, it will be noted that Ms. Morris did go through proper channels to obtain initial permission and received it. It was only after the company sought to have her take the notice down that her conduct may be said to have been defiance or insubordination.
We find no difficulty in concluding that the company has the right to control use of its own bulletin boards. We have found nothing which requires the company to accord a union any privilege of using the bulletin board or boards of the company for any union purpose. Consequently, a union president who avails herself of the use of the company bulletin board, although with permission, and who is requested to remove it and refuses is unquestionably insubordinate. We further conclude that this is misconduct as contemplated by R.S. 23:1601(2) and that it is connected with petitioner’s employment.
While it is .true that the incident in question had nothing to do with petitioner’s specific employment duties, they did relate to the company’s control and policies established for the use of its own premises. It is established that a violation of an employer’s rule or order constitute misconduct within the meaning of the unemployment compensation act. Rankin v. Doyal, 223 So.2d 214 (La.App., 2d Cir. 1969); Jackson v. Doyal, 198 So.2d 469 (La.App., 2d Cir. 1967); Campbell v. Doyal, 190 So.2d 661 (La.App., 2d Cir. 1966); Wilson v. Brown, 147 So.2d 27 (La.App., 2d Cir. 1962); Holmes v. Brown, 147 So.2d 25 (La.App., 2d Cir. 1962); Jackson v. Brown, 136 So.2d 329 (La.App., 2d Cir. 1961); Rachal v. Brown, 136 So.2d 74 (La.App., 3rd Cir. 1969).
The appellant in this case, Maureen Morris, urges that she had a right to communicate with her union members in the manner in which she did. On her behalf attempt is made to present the controversy as a labor management dispute in which the management has been guilty of an unfair labor practice. It is argued on her behalf that she was simply attempting to prevent Morton Salt Company from unilaterally altering the collective bargaining agreement. Further, it is urged that she was attempting to notify as many union members as possible of the union position with reference to the notice given by the employer. In this connection two authorities are cited on behalf of petitioner. These are N.L.R.B. v. Magnavox Company of Tennessee, 415 U.S. *543 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974) and Gale Products, 142 N.L.R.B. 1246. We have reviewed both of these cases. Neither of these cases go to the point of holding that an employer owes his employees or a union representative the privilege of appropriating space on a company bulletin board for the purpose of giving notices to the union. The Magnavox case contains the statement that
“The place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees.”
However, the language which follows makes it clear that all the court meant to say was that employees have a right to distribute information to other employees and to make that distribution as an in-plant solicitation so long as it is on nonworking time. All the case suggests is that a restriction of such rights might be an unfair labor practice act. Nowhere does the case hold that the company must make its bulletin board available as a substitute for other means of communication between employees.
The Gale Products case contains the following statement which is quoted in petitioner’s brief:
“Their place of work is the one location where employees are brought together on a daily basis. It is the one place where they clearly share a common interest and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life and other matters related to their status as employees.”
It may be easily seen on its face that this quotation does not require that management make its bulletin boards available for communication between employees or between union officials and union members.
For the reasons assigned the district court was correct in affirming the action of the Louisiana Board of Appeals. That judgment also ordered plaintiff to pay all costs and we affirm that judgment and assess her with costs in this court.

AFFIRMED.

WATSON, J., dissents and assigns reasons.