BOWES, Judge.
Plaintiff-appellant, Donna M. Johnson (hereinafter Ms. Johnson) appeals a judgment of the district court which affirmed the decision of the Louisiana Board of Review for the Office of Employment Security (hereinafter the Board) denying unemployment benefits to appellant. We affirm.
Ms. Johnson was employed by the Jefferson Parish Council in the Department of Public Works as an Equipment Operator I from 1979 to March 12, 1985. On July 5, 1984, Ms. Johnson failed to punch the time clock, and was given a written warning that such failure was a violation of departmental rules. On July 6, Ms. Johnson again forgot to punch the time clock and, in addition to a written warning, she was suspended for one working day. At this time, she was also informed that a third violation of this rule would result in an indefinite suspension with a recommendation for dismissal. On March 12, 1985, appellant again forgot or neglected to punch the time clock and was subsequently discharged. The Office of Employment Security notified Ms. Johnson on April 20, 1985 that her claim for unemployment benefits had been denied because her failure to abide by company rules and policies was found to be misconduct under LSA-R.S. 23:1601(2).[1] That decision was appealed by Ms. Johnson to the Appeals Tribunal, which, after a hearing, affirmed the determination of the Department. The board of review affirmed the decision of the Appeals Referee and, thereafter, appellant filed a petition for Judicial Review. Because of its untimely filing of an answer and record, the Board was ordered to pay benefits for approximately four and one-half months under LSA-R.S. 23:1634(A).[2] Such did not, of course, determine the merits of the entire claim.
In December, 1986, the court remanded the case to the board of review for the taking of additional evidence, in order to determine whether Ms. Johnson failed to punch the time clock for the third time, or whether she was sent home on sick leave on March 12, 1985. After the second hearing by the Appeals Tribunal, in February, 1987, the administrative judge again found that Ms. Johnson failed to punch her time card, and so was in violation of known company policies. The board of review did not issue an additional decision, and appellant stipulated by motion that for purposes of judicial review, the second determination of the appeals tribunal was deemed to be a decision of the board of review. LSA-R.S. 23:1630.[3] After appropriate review, the tri *781 al court affirmed that decision of the Board, and it is from this judgment that Ms. Johnson has appealed.
Our scope of review is limited and defined in R.S. 23:1634, which reads in pertinent part:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by this court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusions, and file such additional or modified findings and conclusions, together with a transcript of the additional record, with the court.
[[Image here]]
An appeal may be taken from the decision of the district court to the circuit court of appeals in the same manner, but not inconsistent with the provisions of this Chapter, as is provided in civil cases.
In Banks v. Administrator of Dept. of Employment, 393 So.2d 696 (La.1981), the Supreme Court held "... there must be legal and competent evidence to support the factual findings on which the administrative determination turns.”
At the first administrative hearing, Ms. Johnson testified that she had arrived at work early (before 7:00 a.m.) on the morning of March 12th, but that she was ill with cramps, nausea and diarrhea; that she went directly into the bathroom without punching the time clock, and from the bathroom directly to the tractor to which she was assigned. That she then went to the office to ask one supervisor if she could leave due to illness (Ms. Johnson stated at another juncture in the first hearing that she was in the office getting ready to check out the tractor). Mrs. Johnson further stated at this first hearing that another higher ranking supervisor, Lionel Green, later approached her as she waited and asked whether she had punched the time card, to which Ms. Johnson replied that she didn’t remember. Later that morning, she went home sick and, on the following day, was fired. She understood that she violated the rules of the department, and could have been terminated, but she “wasn’t thinking.”
At the second hearing, Ms. Johnson stated that she had asked Mr. Green, at the direction of her immediate supervisor, if she could go home sick at the time that he confronted her about the time card. Ms. Lori Jackson, a co-worker, stated that at around 7:15 on that day, she saw Ms. Johnson who told her that she (Ms. Johnson) was ill. However, Ms. Jackson’s testimony leaves uncertain the exact date on which Ms. Johnson was found to be ill; Ms. Jackson said that right after Ms. Johnson discussed her illness, she also said that she had been fired. This would indicate that the conversation took place on the day after the time clock incident, since Ms. Johnson did not know that she had been fired until March 13th.
Further, Lionel Green, the supervisor, stated that Ms. Johnson did not indicate to him that she was ill, or request leave to go home. He confronted her about the time card between 7:15 and 7:30 a.m. The departmental records show that Ms. Johnson went on sick leave at 8:34 a.m.
The administrative law judge issued the following findings of fact:
The claimant was confronted by her supervisor concerning her failure to punch her time card and after that conversation had ended, she went [sic] her immediate foreman and requested to leave for home due to her illness. At no time did the employer indicate that the claimant’s separation was concerning her leaving due to illness. The claimant was given permission to leave the job on the date in questioned [sic] due to her illness and a discharge was only concerning her failure to punch her time card, which had occurred previous [sic], on the same date. The claimant had reported to work on this date and failed to punch her time card, but did begin work at her job station. After working for approximately *782 forty-five minutes, she was approached by the supervisor concerning her failure to punch her time card. At approximately one and one half hours after starting work, the claimant reported to her foreman and informed him that she wanted to leave for the day due to her personal illness and was granted such a request. She was discharged from her employment on the next day for failing to punch her time card for the third time after receiving both writing [sic] warnings and suspension for failing to punch the time card. This was in violation of known company policies for which the claimant had received [sic] during the hiring for the employment.
In the absence of fraud, a judicial review of the findings of the board of review in employment compensation matters is statutorily limited to (1) whether the facts found by the Board are supported by competent evidence produced at the hearings and, if so, (2) whether such facts do, as a matter of law, justify the action taken. LSA-R.S. 23:1634, supra. Rankin v. Doyal, 223 So.2d 214 (La.App. 2 Cir.1969). “... the administrative tribunal’s evaluation of the credibility of opposing witnesses is binding upon the courts in a judicial review of the agency’s determination.” Rankin, supra.
“Where more than one reasonable construction may be made from the evidence, the court should accept the interpretation made by the agency.” Causin v. Blache, 498 So.2d 101 (La.App. 5 Cir.1986).
Courts ordinarily will not upset a factual determination by an administrative agency based upon the acceptance of one of two or more opposing versions of an incident by witnesses; and when the evidence presented at an administrative hearing is open to several reasonable constructions, the courts will accept the construction of the evidence which the administrative agency has reasonably made in reaching its factual determination.
Ross v. Holiday Inn, 191 So.2d 335 (La.1966).
Bearing in mind these criteria for review, we are obliged to accept the finding of the administrative law judge that Ms. Johnson first failed to punch her time card on the date in question, and only later did she report her illness and request leave. Ms. Johnson was represented by counsel at the second hearing, during which time all witnesses, including Mr. Green, were subject to cross-examination. Mr. Green testified from his own personal knowledge, and there is nothing in the record to call into question his credibility. The trial judge apparently believed his version of events and we cannot say that he erred or that such findings were not supported by competent evidence.
It is submitted by appellant that the facts do not support denial of unemployment benefits. We disagree. Ms. Johnson testified that she was aware of her obligation to punch the time clock; that she usually punched in promptly upon arriving at work; that she knew and understood that a third failure to punch in could result in discharge. Her only defense was that she was ill and “wasn’t thinking.”
This court is sympathetic to Ms. Johnson and her illness. However, we note that she was thinking clearly enough to report at work timely, find her tractor, and begin the necessary procedure to check out the tractor, whether or not she was feeling ill enough during that time to want to go home. While we might have come to a different conclusion than did previous tribunals, we are not at liberty to substitute our own judgment and we cannot say that the trial court was clearly wrong. After all, if an employee would be permitted to violate valid established company rules knowing it would very probably result in dismissal, then allowing such violator to collect unemployment benefits would enable one to purposely get fired so that he could collect these benefits. This would certainly be against the intent of the unemployment statutes and against public policy-
The word “misconduct” in LSA-R.S. 23:1601 is used to connote intentional wrongdoing. Banks, supra. In Banks, *783 the court found that the claimant had not been told that her method of reporting absences was faulty and that repetition of such would result in her discharge. The court placed emphasis and instructions on the lack of warning to the claimant in Banks, and so no deliberate or willful disregard of rules was found to have taken place.
For a claimant to be disqualified from benefits because of “misconduct connected with his employment” under La.R.S. 23:1601(2), the “misconduct” must have resulted from willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3rd Cir.1976). The type of behavior which is considered “willful misconduct” is intentional wrong behavior. Banks v. Administrator of Employment Security, 393 So.2d 696 (La.1981). Because of the beneficial purpose of unemployment compensation, the term “misconduct” should be construed so as to favor the awarding of benefits rather than disqualification. Charbonnet v. Gerace, 457 So.2d 676 (La.1984).
Weber v. Whitfield, 511 So.2d 831 (La.App. 5 Cir.1987).
When there is a deliberate violation of the employer’s rules by an employee, there is “misconduct.” Under this standard protection of the interests of the employer plays no part. The employee’s action is misconduct merely by deliberate violation of an employer’s rule.” Williams v. Adm’r of Office of Emp. Sec., 474 So.2d 544 (La.App. 3 Cir.1985).
See also Rankin v. Doyal, supra; Weber v. Whitfield, supra.
In Williams, the claimant knew she could be fired if she left her post without permission, and the court upheld denial of benefits to her.
Misconduct must be determined on the facts of the individual case. Banks, supra. Ball v. Lockwood, 440 So.2d 932 (La.App. 2 Cir.1983). An employee must be shown to have been aware of company rules or policy for his behavior to be construed as willful and intentional misconduct. Banks, supra; Causin, supra.
Therefore, under the facts and circumstances of the present case, we find that the trial court committed no manifest error and correctly affirmed the administrative findings of the appeals tribunal and board of review. The judgment of the trial court is affirmed.
AFFIRMED.

. LSA-R.S. 1601 reads in pertinent part:
An individual shall be disqualified for benefits:
(2) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment.

. LSA-R.S. 1634. Judicial review; procedure
A. Within the time specified in R.S. 23:1630, the administrator, or any party to the proceedings before the board of review, may obtain judicial review thereof by filing in the district court of the domicile of the claimant a petition for review of the decision, and in such proceeding any other party to the proceeding before the board of review shall be made a party defendant. The petition for review need not be verified but shall state the grounds upon which such review is sought. The administrator shall be deemed to be a party to any such proceeding. If the administrator is a party defendant, a certified copy of the petition shall be served upon him by leaving with him, or such representative as he may have designated for that purpose, as many copies of the petition as there are defendants. With his answer or petition, the administrator shall certify and file with the court, within sixty days of service of process, a certified copy of the record of the case, including all documents and papers and a transcript of all testimony taken in the matter, together with the board of review’s findings, conclusions and decisions. If the administrator fails to file the record with the court within the time provided herein, the court, upon hearing sufficient evidence, may issue a judgment directing payment of benefits to the claimant.

. LSA-R.S. 23:1630 reads in pertinent part:
... Provided that upon denial by the board of review of an application for appeal from the decision of an appeal tribunal, the decision of the appeal tribunal shall be deemed to be a decision of the board of review within the meaning of this Section for purposes of judicial review and shall be subject to judicial review within the time and in the manner provided for with respect to decision of the board of review, except that the time for initiating such review shall run from the date of notice of the order of the board of review denying the application for appeal.